(Nos. 32519, 32548.—

ILLINOIS BELL TELEPHONE COMPANY, Appellee, *vs.* ILLI-
NOIS COMMERCE COMMISSION, Appellant.—THE CITY
OF CHICAGO, Appellee, *vs.* ILLINOIS COMMERCE COM-
MISSION *ex rel.* Illinois Bell Telephone Company, Ap-
pellant.

*Opinion filed January 22, 1953—Rehearing denied March 26, 1953.*

. IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM R. MING, JR., MILTON MALLIN, and WILBUR S. LEGG, of counsel,) for the Illinois Commerce Commission, appellant.

SIDLEY, AUSTIN, BURGESS & SMITH, of Chicago, REID & OCHSENSCHLAGER, of Aurora, and FRANK R. REID, of Aurora, for Illinois Bell Telephone Co., appellant and appellee.

JOHN J. MORTIMER, Corporation Counsel, of Chicago, (JOSEPH F. GROSSMAN, and GERALD M. CHAPMAN, of counsel,) for the city of Chicago, appellee.

RALPH F. LESEMANN, RICHARD J. FALETTI, ALBERT TUXHORN, GENE D. WEISIGER, and MILLIKEN, VOLLERS & PARSONS, (KEITH I. PARSONS, of counsel,) as *amici curiae* on rehearing.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

These proceedings arise out of the filing of new schedules increasing rates by Illinois Bell Telephone Company with the Illinois Commerce Commission on January 12, 1951. By orders entered December 10, 1951, and December 12,

1951, the commission cancelled all of such rate schedules. The city of Chicago filed an appeal to the superior court of Cook County from the first order and the company, after having filed appeals to the circuit court of Kane County, from each order, also filed a separate appeal from each order to the superior court. All three appeals were consolidated by the superior court and that court entered a judgment setting aside the commission's order for lack of jurisdiction, but did not pass upon the merits. From that judgment the telephone company and Commerce Commission each appeal to this court, the latter seeking reversal only as to one phase of the jurisdictional dispute.

Upon the appeal of the company to the circuit court of Kane County, the causes were there consolidated and that court found that it had jurisdiction and, after a hearing on the merits, vacated and set aside the orders of the commission.

By order of this court all proceedings, including the appeals by the commission from the order of the circuit court of Kane County in the consolidated cases there, an appeal by Illinois Bell Telephone Company from the order of the superior court in the consolidated proceedings before it and a cross appeal from the same order by the commission, are here consolidated.

Since some of the parties are appellant, appellee and cross appellant and the others are both appellants and appellees, for convenience Illinois Bell Telephone Company will be referred to herein as the "Company," Illinois Commerce Commission will be designated the "Commission" and the city of Chicago will be referred to as the "City."

There are two primary procedural questions involved. The first is an attack by the Company upon the jurisdiction of the superior court and the second is brought about by the contention of the City that the Commission lacks jurisdiction to grant or enter upon a hearing concerning the rate schedules.

The questions will be considered in inverse order since, if the contention of the City be sustained, then neither the superior court nor the circuit court could consider the cause on its merits.

The City has contended, both before the Commission and in the courts, that the Commission should have cancelled and annulled the rate schedules filed with it, for the reason that less than two years had elapsed since the last order had been entered by the Commission on rate schedules filed by the Company, in violation of section 67 of the Public Utilities Act. (Ill. Rev. Stat. 1951, chap. 111⅔, par. 71.) The particular portion of section 67 relied upon is the last sentence, which reads as follows: "Only one rehearing shall be granted by the Commission; but this shall not be construed to prevent any party from filing a petition setting up a new and different state of facts after two years, and invoking the action of the Commission thereon." It is contended that section 67 creates a two-year period of repose, during which a utility is prohibited from filing new rate schedules.

The City applied to the circuit court of Cook County for a writ of prohibition against the Commission and the Company to prevent the former from considering the proposed increased rate schedule and compelling it to cancel it. That court refused the remedy and the City dismissed its petition. At the close of the hearings before the Commission the City moved the Commission to disregard the evidence and enter an order cancelling the schedules on the sole ground that two years had not elapsed since its last order. The Commission overruled the motion and entered its order cancelling all increases but did so on its findings from the evidence and not on the City's interpretation of section 67.

This question has been arising for many years before the Commission and the trial courts, but has not heretofore

been directly raised and squarely passed upon by this court. It is time that there be a final determination of this issue.

The sentence above quoted, relied upon by the City, appeared in the original public utilities statute and an identical provision has been included in the statutes ever since. It is conceded by the City that the Commission has consistently overruled objections to its jurisdiction based upon the two-year limitation, and the trial courts have sustained the Commission in such rulings. It is true that we have held that public utility reports are not considered as authority in this court on an issue involving the review of an order of the Commission and that we cannot allow a governmental agency to extend the operation of a statute by administrative regulation. (*State Public Utilities Com. ex rel. East St. Louis Stone Co.* v. *Terminal Railroad Assn.* 281 Ill. 181; *Mallen Co.* v. *Department of Finance,* 372 Ill. 598.) On the other hand, such administrative and judicial authority over a period of thirty years is persuasive, since we are interpreting the meaning of the statute and trying to gather the legislative intent. The legislature is well aware of the rulings on this point, has revised the Public Utilities Act once and has amended it numerous times, without changing the language of the quoted sentence. Surely, if it would have intended the sentence to act as a limitation of jurisdiction of the administrative body and found that such limitation was being ignored by the tribunal created by it, the legislature would have amended the act in such a manner that its meaning be made clear.

A review of the cases cited in connection with this proposition indicates that, prior to this time, we have only passed upon it inferentially.

In the case of *Chicago Railways Co.* v. *City of Chicago,* 292 Ill. 190, there was a prior order within two years. Within three and one-half months after the order in that case was entered and while the appeal from the said order

was pending, the company filed a new petition for increases in rates based on increased labor cost since its evidence was heard in the last proceeding. The commission, in the new proceeding, authorized a temporary increase pending hearings on a permanent increase, and from this order the city of Chicago appealed. It relied on the last sentence, a sentence identical with the one quoted above, and other points. The circuit court rejected that particular point but set aside the commission's order on other objections. The point was again argued in this court but we reversed the circuit court on other grounds. Upon a petition for rehearing the city again raised the question of the failure of two years to elapse. This court denied the rehearing and filed its original opinion. It was the rule then, as now, that it is the duty of this court to rule on a jurisdictional defect at any stage of the proceeding that such a defect becomes apparent. (*People* v. *Industrial Savings Bank,* 275 Ill. 139; *Michelson* v. *Industrial Com.* 375 Ill. 462; *Werner* v. *Illinois Central Railroad Co.* 379 Ill. 559.) While we did not in that opinion specifically rule upon the point, it must be taken as rejected in view of the fact that it was presented and was jurisdictional. In the instant case the City ignored the above case by saying that there was no necessity for a test of the effect of the rate since it had been in force many years. If, as contended by the City, the last sentence of section 67 was meant to be a limitation, then the fact that the reason for its existence was not present would not alter the statutory limitation.

Both the City and the Company cite the case of *Peoples Gas Light and Coke Co.* v. *Slattery,* 373 Ill. 31. That case involved an attack in equity by the utility on an interim order of the Commission denying temporary relief in a proceeding on schedules filed two weeks after the final order in a prior proceeding. In that case, while the sentence in question was not one of the questions raised, this court recognized the continuing jurisdiction of the Com-

mission. The City, emphasizing the few words, "and the rate having been in force for more than two years," argued that the court obviously had in mind the sentence in question as a statutory period of repose. A reading of the whole case does not bear out such contention. In *City of Granite City* v. *Commerce Com.* 407 Ill. 245, which was an appeal from a service order, it was argued that section 67 precluded consideration of the petition on which the order was based, it having been filed within two years of a prior order concerning the same subject matter. We held that the point could not be considered on appeal because it had not been raised in a petition for rehearing before the commission. This was, in effect, a holding rejecting the theory advanced by the City. The City also cites *Alton Railroad Co.* v. *Commerce Com.* 407 Ill. 202. There an entirely different question was involved. The city in that case used the sentence in question as its principal argument to justify its failure to file a petition for rehearing on the ground that section 67 contained a provision that only one rehearing should be granted by the commission. We do not deem the language of that opinion as authority for the City's contention.

The construction contended for seems to be in conflict with the spirit of the act. One of its primary purposes was to set up machinery for continuous regulation as changes in conditions require. It appears to be inherent in the act itself. A thorough reading of the act, particularly sections 36 and 71, makes it clear that the isolated sentence is in conflict with the proposition that a two-year period must elapse. If the legislature intended the last sentence of section 67 to be an absolute two-year limitation, then it probably would have placed it in section 36 of the act, and would not have tacked it on to an entirely distinct section. We are of the opinion that the last sentence of section 67 does not constitute a limitation of two years.

In view of our holding hereinabove expressed, we do not deem it necessary to go into the question of whether

two years had actually elapsed prior to the filing of the new rate schedule involved herein.

This brings us to the second jurisdictional question which is whether the superior court of Cook County or the circuit court of Kane County has jurisdiction. There can be a valid appeal to one court only from a decision of the Commerce Commission. Section 68 of the Public Utilities Act provides as follows: "The court first acquiring jurisdiction of any appeal from any rule, regulation, order or decision shall have and retain jurisdiction of such appeal and of all further appeals from the same rule, regulation, order or decision until such appeal is disposed of in such circuit or superior court." The same section authorizes an appeal to the circuit or superior court of the county in which the subject matter of the hearing is situated and, if the subject matter of the hearing is situated in more than one county, then of any one of such counties. The rate schedules filed will affect many counties so that there is a wide latitude of jurisdiction.

If the orders of December 10 and December 12 be considered as separate and distinct orders then the actions taken by the City with reference to each must be considered separately. The City made application for a rehearing of the order of December 10 and when that application was denied it did not appeal therefrom. As to the order of December 12, it failed to make application for a rehearing and consequently it had no right to take an appeal from that order. On the other hand, if the order of December 12 was merely amendatory of the order of December 10 and the two are considered as a single order, then the appeal was properly taken, provided that nothing else intervened.

In the instant case, however, if the two orders be considered as a single order, it then further appears that the City was not adversely affected by the Commission's order and therefore had no appealable interest. It is fundamental that the forum of courts of appeal should not be afforded

to successful parties who may not agree with the reasons, conclusion or findings below. As appellee, a party has the right to sustain the judgment below upon any ground warranted by the record irrespective of whether the particular reasons assigned or specific findings are correct. *Bullman v. Cooper*, 362 Ill. 469; *Chicago, Milwaukee and St. Paul Railway Co. v. State Public Utilities Com.* 267 Ill. 544; *Roby v. South Park Comrs.* 215 Ill. 200.

From our views hereinabove expressed it appears that the attempted appeal of the city of Chicago was ineffective and that the superior court had no jurisdiction. It follows that, since the first valid appeal was to the circuit court of Kane County, that court had exclusive jurisdiction.

This court is now confronted with the question of passing upon the merits of this case. The order of the Commission entered on December 10, 1951, as corrected by the order of December 12, permanently suspended and cancelled certain rate schedules proposed by the Company. On appeal the circuit court of Kane County vacated and set aside the Commission's order, finding that such order was unreasonable and unlawful, that it was not supported by necessary findings, that it was against the manifest weight of the evidence, and that it was without substantial support in the evidence.

After hearing many expert witnesses, taking thousands of pages of testimony and receiving a great number of exhibits and charts in evidence, the Commission found, among other things, that the Company is one of nineteen operating subsidiaries of American Telephone & Telegraph Company, commonly known as A. T. & T., included in the Bell System; that the Company provides 90 per cent of the local exchange and intrastate toll service in Illinois and in conjunction with other Bell System operating companies, the Long Lines Department of A. T. & T., and independent telephone companies, the Company also provides interstate toll service; that A. T. & T. owns 99.3 per cent of the

total outstanding common stock of the Company; that A. T. & T. also owns substantially all of the stock of Western Electric Company, Inc., the subsidiary which manufactures, purchases and repairs telephone equipment and apparatus for Bell System companies, including the Company, under the terms of a standard supply contract, and, together with Western Electric Company, A. T. & T. owns all the stock in Bell Telephone Laboratories, Inc., the Bell System research, development and engineering division; that by terms of a license contract the Company is obligated to pay one per cent of substantially all its gross operating revenues to A. T. & T.; that the major portion of the capital of the Bell System operating companies, including the Company, is furnished by A. T. & T.; that the total return of the Company for the year 1950 for its intrastate business in Illinois was $25,698,167, which was 6.19 per cent of the average original cost, less depreciation, of the Company's property separated by it to its intrastate business (that for the 12 months ended August 31, 1951, this return was 5.87 per cent); that in 1952, under present rate schedules, the Company's return will be about $23,000,000, not including additional return which may be derived from addition of telephones after September 1, 1951; that the Company's earnings for the year 1950 amounted to $9.24 per share of its common stock outstanding and that the Company paid a $7.00 per share dividend in that year, which dividend provided earnings of $9.68 per share of A. T. & T. stock on the basis of the investment of A. T. & T. in the Company, and that these earnings in turn provided earnings of $13.06 per share on A. T. & T. stock on the basis of A. T. & T.'s investment in the Company, and that in 1952 the Company's earnings from its Illinois intrastate business will be sufficient to provide earnings of about $9.50 per share on A. T. & T. stock on the basis of A. T. & T.'s investment in the Company attributed to its Illinois intrastate business.

The Commission's order further found that the net original cost of the property of the Company separated by it to Illinois intrastate operations, including construction work in progress, property held for future use, acquisition adjustment account, and materials and supplies, as well as telephone plant in service, as of September 1, 1951, was $443,425,000; that approximately 65 per cent of the property included in the estimates of net original cost and reproduction cost depreciated, submitted by the Company, has been purchased since 1945 during the postwar period of high price and wage levels; that a fair rate of return on said net original cost of the property is 4.83 per cent, and on that basis the present rates of the Company will provide a return of about 5.2 per cent; that it was estimated by the Company that the reproduction cost new of this property as of September 1, 1951, was $883,969,000, and total depreciation thereon was estimated by the Company at $238,605,000; that the fair value of this property, giving effect to differences between original cost and reproduction cost estimates was not more than $472,000,000 as of September 1, 1951, that a fair rate of return on that fair value is 4.6 per cent and that present rates will provide a return on such fair value of 4.87 per cent. The Commission further found in its order that the rates in effect at the time the proposed rate schedules were filed are just and reasonable; that the earnings of the Company under the said rates were just and reasonable; and that the Company failed to maintain its burden of showing that the rates filed in the new schedules are just and reasonable.

The Company attacks the Commission's findings and order and states that two issues are presented: (1) whether the Commission may fix utility rates without giving effective consideration to current economic conditions, particularly the current earnings of other enterprises and present price levels, (2) whether the Commission's mechanical "interest plus dividends" formula is a reasonable and lawful basis

of rate regulation. From the record in this case it appears that a considerable amount of testimony and evidence was produced by the Company in respect to its first point, and a serious attempt was made to compare the earnings, capital structures, dividends, rates of return, investment and debt ratios, of various large industrial corporations with those of the Company over a period of certain years. This court declared in *Public Utilities Com. ex rel. City of Springfield* v. *Springfield Gas and Electric Company*, 291 Ill. 209, at page 217: "* * * that to induce the investment and continuance of capital there must be some hope of gain commensurate with that realizable in other business, and that the mere assurance that the investment would not be confiscated would not suffice." It is evident that in the exercise of its sound discretion the Commission, in the fixing of reasonable rates as required of it by law, must necessarily consider, among other things, the factor of a reasonable return on the capital placed in the utility by the investors. In the final analysis, the rates fixed by it (in fixing prices as low as possible for the general public purchasing the services) should be sufficient to provide for operating expenses, depreciation, reserves that are necessary in good business judgment and operations and a reasonable return to the investor on the basis of the fair value of the utility property. This court will, however, take notice of the fact that there is a difference in industrial company investments and public utility investments, it being very apparent that with varying degrees of risks there must necessarily be varying degrees of income return on invested capital. When investing in a business dedicated to public service one must recognize that, as compared with investment in private business, he cannot expect either high or speculative dividends, but that his obligation limits him to only fair and reasonable profit. *Dayton-Goose Creek R. Co.* v. *United States*, 263 U.S. 456.

The Commission now urges this court to depart from its established holdings in public utility rate cases on the basis of the decision of the United States Supreme Court in the case of *Federal Power Com.* v. *Hope Natural Gas Co.* 320 U.S. 591. The *Hope case,* however, is not a precedent for the formulas adopted by the Commission in this case. Moreover, the language of that case is consistent with the view expressed above. That case states, with respect to corporate rates, that "The rate making process under the act, *i.e.,* the fixing of 'just and reasonable' rates involves a balancing of the investor and the consumer interests. * * * But such considerations aside, the investor interest has a legitimate concern with the financial integrity of the company whose rates are being regulated. From the investor or company point of view, it is important that there be enough revenue not only for operating expenses but also for the capital costs of the business. * * * By that standard, the return to the equity owners should be commensurate with the returns on investments on other enterprises having corresponding risks. That return, moreover, should be sufficient to assure confidence in the financial integrity of the enterprise so as to maintain its credit and to attract capital." 320 U.S. at 603.

It was urged before the Commission, and urged at times in the Commission's brief, that the Commission should be permitted to use as a basis for its findings and fixing of reasonable rates only the value of the investment, without regard to the present value of the company's property dedicated and actually used in public service. It has further been pointed out by the Commission that one of the principal factors which enters into fixing valuation of a public utility is the rate of return itself. This statement at first blush has a deceptive quality of truth. Its best criticism is that it creates an inextricable circle, providing no beginning nor any basis for fixing a rate of return other than the

nebulous formula "that when all things are considered the rate should be just and reasonable and provide a reasonable return on the investment." A further criticism would be that the adoption of such a rule would inevitably lead to the sin of over-invested capital, or to a situation susceptible to "watered stock." It was for this very reason that the sound, common-sense, and business-judgment rule of a reasonable return on the fair value of the property was evolved in the history of rate making in this country.

Although the Commission has seen fit to disregard all Company estimates in respect to reproduction cost of the Company's property, it has nevertheless recognized that the reproduction cost exceeded the net original cost by $28,575,000. The basis for this amount of excess valuation is stated to be a "judgment estimate" of the Commission. It is supported by no evidentiary findings and has no basis in the record of this case. It appears that the Company's criticism in this respect is correct—that the net original cost of the Company's property derived from equity capital was increased by the Commission by a certain factor resulting in a maximum figure of $472,000,000 and that this factor was derived from the fact that the stock market quotations of A. T. & T. stock exceeded the book value by such percentage factor. What relationship, if any, this factor has to present fair value is nowhere shown.

In *Illinois Central Railroad Co.* v. *Illinois Commerce Com.* 387 Ill. 256, at page 275, this court, in recognizing the right of a utility to have its rates produce a reasonable return, stated, "The limitations imposed upon the courts in reviewing orders of the commission are well defined. The law is settled that the matter of rate regulation is essentially legislative. The fixing of rates is not a judicial function."

The statutory language that rates and charges made by a public utility shall be "just and reasonable" has remained unchanged since the Public Utilities Act of 1913. In con-

struing the statute this court held that the Commission must use a rate base which represents the present fair value of the utility property, arrived at after full and proper consideration of reproduction cost, and a reasonable return, based upon an appraisal of the opportunities available for investment in other enterprises. *Public Utilities Com.* v. *Springfield Gas and Electric Co.* 291 Ill. 209.

In 1933 the legislature added section 36 to the Public Utilities Act, which provided for temporary rate reductions when the Commission finds that a utility's earnings are "* * * in excess of the amount required for a reasonable return upon the value of said public utility's property used and useful in rendering its service to the public, * * *." This court further held, as it had previously done on many occasions, that the determination of just and reasonable rates under the Illinois statute depends upon the *present fair value* of a utility's property. *Peoples Gas Light and Coke Co.* v. *Slattery,* 373 Ill. 31.

Section 30 of the Public Utilities Act empowers the Commission to conduct valuation proceedings. Sections 32 and 36 of the act require that the rates be just and reasonable. Section 65 of the act requires the Commission to make and render findings concerning the subject matter and facts inquired into and enter its order based thereon. Such findings of fact must be sufficiently specific to enable the courts to intelligently review the orders of the Commerce Commission, and to ascertain if the facts upon which such orders are based constitute a fair and reasonable basis for the decision of the Commission. *Illinois Central Railroad Co.* v. *Commerce Com.* 411 Ill. 526.

This court is powerless to make new rates and, as previously stated, the legislature has vested in the Commission the exclusive function of fixing just and reasonable rates of public utilities. Orders of the Commerce Commission are entitled to great weight and when the sufficiency of an order is questioned it will not be set aside unless it is clearly

against the manifest weight of the evidence, is arbitrary or unreasonable, or in clear violation of a rule of law. The order of the Commission, as a legislative act, is presumed to be valid, even where the court exercises an independent judgment in reviewing it. This court has so held in *Peoples Gas Light and Coke Co.* v. *Slattery,* 373 Ill. 31. However, in the very same case we declared, at page 54, quoting from the *Springfield Gas case,* "The basis of all calculations as to the reasonableness of rates to be charged by a corporation maintaining a public utility under legislative sanction must be the fair value of the property being used by it for the convenience of the public, and in order to ascertain that value the original cost of construction, the amount expended in permanent improvements, the present cost of construction, the probable earning capacity of the property under the particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration and are to be given such weight as may be just and right in each case."

Determinations of values and valuations upon various properties, structures and businesses must necessarily be founded upon opinion. It is understandable that the factors which enter into the picture of determining values are many and varied to such an extent that several qualified and credible experts can honestly fix appraisals of the same properties at varying levels and in different amounts. This, in itself, should not afford the Commission opportunity to entirely reject expert opinion testimony as to valuation in cases of this nature.

In view of the foregoing, it is clear that the Commission erred in relying upon the "interest plus dividends" formula as an exclusive rate-making guide; in failing to take into account current economic conditions, present price levels, and reproduction costs; and in failing to make specific findings upon which it predicated its conclusions. It is the Commission's duty, therefore, to reconsider the record in

this case, to hear such additional evidence as may be necessary, and to enter findings and conclusions, all in accordance with the views expressed in this opinion.

Therefore, the order of the superior court of Cook County is reversed; and the order of the circuit court of Kane County is affirmed, and the cause is remanded, with directions to remand to the Illinois Commerce Commission for further proceedings not inconsistent herewith.

*Superior court reversed;*
*circuit court affirmed, and cause*
*remanded, with directions.*