UTILITY USERS LEAGUE and Nickolas L. Barnes, Petitioners,

v.

FEDERAL POWER COMMISSION, Respondent,

Commonwealth Edison Company, Intervenor.

No. 16164.

United States Court of Appeals Seventh Circuit.

April 5, 1968.

Rehearing Denied May 21, 1968.

Rehearing Denied May 28, 1968, en banc.

Harry R. Booth, Chicago, Ill., for petitioners.

Charles A. Bane, Richard G. Ferguson, Michael I. Miller, Laurence D. Lasky, Edward J. O'Malley, Chicago, Ill., for intervenor-respondent, Isham, Lincoln & Beale, Chicago, Ill., of counsel.

Richard A. Solomon, Gen. Counsel, Peter H. Schiff, Acting Sol., Wallace E. Brand, Atty., Federal Power Commission, Washington, D. C., Drexel D. Journey, Asst. Gen. Counsel, for respondent.

Before HASTINGS, Chief Judge, and CASTLE and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

This is a petition for review of the Respondent Federal Power Commission's order of December 2, 1966 approving the merger of Central Illinois Electric and Gas Company (Central) into Respondent-Intervenor Commonwealth Edison Company (Edison). Petitioners are Utility Users League and Nickolas L. Barnes, an Edison customer. The Utility Users League, according to the allegations in its petition to intervene before the Commission, is "a not-for-profit association of utility users including customers of Commonwealth Edison Company." Edison and Central are public utilities incorporated and operating in Illinois.

Prior to merger Edison provided electric energy for a service area of 11,000 square miles having a population in excess of 7,000,000. It had 2,272,700 customers in its service area, which contained the City of Chicago and its suburbs. The net value of its plant on December 12, 1965 was $1,788,082,518, and its annual operating revenue was $589,315,479. Edison operated twelve steam generating stations having a net capability of 7,764,000 kilowatts.

Central furnished electricity, gas, and minor amounts of water and steam heat in five non-contiguous territories in Illinois. The largest of these territories was the Rockford division, which contained 78% of Central's 94,468 electric customers and 81% of its 87,227 gas customers. That territory was surrounded on three sides by Edison's service area. On December 31, 1965 Central's net utility plant was valued at $91,681,655 (of which $56,422,122 was allocated to electric plant and $33,761,799 was allocated to gas plant) and its annual operating revenue was $40,533,403 (of which $22,951,829 was electric revenue and $17,126,436 was gas revenue). Central's two generating stations had a capability of 239,500 kilowatts. In the five years ending with 1965, Central's electricity sales increased at a compound annual rate of 7.8 percent. Its estimated 1966 peak load was 210,000 kilowatts.

Edison and Central filed a joint application for approval of their plan of merger on March 2, 1966 pursuant to § 203(a) of the Public Power Act, 16 U.S.C.A. § 824b(a). Petitioners filed their petition to intervene on April 7, 1966. Their petition and that of the City of Rockford were granted on July 6, 1966. Hearings were held between July 11 and July 20, 1966. Petitioners did not appear at those hearings, but were permitted to submit written interrogatories. The Commission's order and opinion approving the merger were filed on December 2, 1966. On January 30, 1967, the Commission denied petitioners' petition for rehearing filed January 3, 1967.

In its opinion the Commission considered the reasonableness of the purchase price, the accounting treatment, the economic effect of the merger, its voluntariness and its effect on competition. The Commission concluded that the merger was consistent with the public interest, as required by 16 U.S.C.A. § 824b(a). It retained jurisdiction for future decision on Edison's operation of Central's gas and non-contiguous electric properties.

In their petition for review petitioners challenge the Commission's order on several grounds. They contend that the Commission failed to give adequate con-

sideration to the anti-competitive effects of the merger, that the applicants failed to make an adequate record, that the merger violates the Public Utility Holding Company Act § 11(b)(1), 15 U.S.C.A. § 79k, that the purchase price was excessive, and, generally, that the merger is not "consistent with the public interest." See, 16 U.S.C.A. § 824b(a).

We are without jurisdiction to entertain this petition unless petitioners are parties "aggrieved by an order issued by the Commission." 16 U.S.C.A. § 825l(b). Similar limitations on the right to obtain judicial review are contained in other federal regulatory statutes. See, e. g., Natural Gas Act, 15 U.S.C.A. § 717r(b); Communications Act, 47 U.S.C.A. § 402(b) (6).

■ The term "aggrieved party" has long eluded precise definition, and, as the Supreme Court has noted, its meaning "is in any event more or less determined by the specific circumstances of individual situations." United States ex rel. Chapman v. Federal Power Commission, 345 U.S. 153, 156, 73 S.Ct. 609, 612, 97 L.Ed. 918 (1953). Clearly, a petitioner for review need not show injury to a personal economic interest. Scenic Hudson Preservation Conference v. Federal Power Commission, 2 Cir., 354 F.2d 608, 615 (1965).

■ A party seeking judicial review cannot rest on the mere allegation that he is "aggrieved." He must make a preliminary showing of aggrievement. Lynchburg Gas Company v. Federal Power Commission, 3 Cir., 284 F.2d 756 (1960); Cincinnati Gas & Electric Co. v. Federal Power Commission, 101 U.S. App.D.C. 1, 246 F.2d 688 (1957); Panhandle Eastern Pipe Line Co. v. Federal Power Commission, 3 Cir., 219 F.2d 729, cert. denied, 349 U.S. 945, 75 S.Ct. 874, 99 L.Ed. 1272, reh. denied, 350 U.S. 868, 76 S.Ct. 99, 100 L.Ed. 769 (1955).

■ In determining petitioners' standing to seek review in this court we are not bound by the Commission's order granting petitioners leave to intervene in the proceeding before the Commission. Petitioners' standing is a jurisdictional question to be determined by this court. In any event, the Commission's order permitting intervention provided that "the admission of such petitioners shall not be construed as recognition by the Commission that they, or any of them, might be aggrieved because of any order or orders issued by the Commission in this proceeding."

Petitioners alleged before the Commission that some of them were customers of Edison. Consumers have been found to be "aggrieved persons," entitled to obtain judicial review. City of Pittsburgh v. Federal Power Commission, 99 U.S.App. D.C. 113, 237 F.2d 741, 748–749 (1956); Reade v. Ewing, 2 Cir., 205 F.2d 630, 631–632 (1953); Associated Industries of New York v. Ickes, 2 Cir., 134 F.2d 694, 705–713, vacated for mootness, 320 U.S. 707, 64 S.Ct. 74, 88 L.Ed. 414 (1943). In each of these cases, however, the petitioner made substantial factual allegations that the challenged agency decision was detrimental to him.

Petitioners here have made no showing that the merger approved by the Commission has a significant detrimental effect on them, either actually or potentially. They perceive several possible detrimental effects of the merger: a lessening of competition, the joint ownership of gas and electric properties by Edison, increased rates for former Central customers, increased rates for all customers to offset the allegedly excessive price paid for Central's stock and increased difficulty in demonstrating the need for rate reductions.

■ Petitioners have shown, in general terms, that the merger will increase Edison's economic power and contribute to economic concentration in the electrical energy industry. They have not shown how such growth and concentration will aggrieve them. In a market characterized by competition a merger or other acquisition necessarily injures the consumer if it substantially lessens competition. In the electric utility industry, where restraints on competition are not only tolerated, but encouraged, see 16

U.S.C.A. § 824a(a), and where rates are subject to federal or state regulation, 16 U.S.C.A. §§ 812, 824d, injury to the consumer cannot be inferred from a merger, but must be demonstrated.

Petitioners have not shown that competition will be lessened by the merger of Edison and Central. The Commission found that Edison and Central were not in direct competition. Their sales to ultimate consumers were within their respective exclusive franchised areas, and Central was not engaged in supplying wholesale electricity. There has been no showing that Central was a potential entrant into the wholesale market. Compare United States v. El Paso Natural Gas Co., 376 U.S. 651, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964). Nor has there been a showing that the enlargement of Edison's economic power as a consequence of the merger may have an anti-competitive effect.

We do not say that the merger of Edison and Central has no adverse effect on competition. We merely hold that petitioners have not shown an anti-competitive injury affecting them.

■ Edison's ownership of both Central's electric properties and its gas properties may be injurious to energy consumers in the territory formerly served by Central. However petitioners, consumers in Edison's pre-merger territory, are not aggrieved by such joint ownership.

Petitioners have made a showing that the merger may result in higher rates for Central's electric customers. They refer to the Commission's statistical studies of typical electric bills, which show that Edison's typical Chicago and suburban residential bills were higher than Central's typical Rockford residential bill. However, there is no showing that petitioners are aggrieved by higher rates for former Central customers.

■ Petitioners allege that customers of the merged utilities will be required to pay rates high enough to pay dividends on the "excessive" amount of securities issued in exchange for Central's stock. The merger plan approved by the Commission provides for the automatic conversion of each share of Central common stock into a share of new Edison $1.425 convertible preferred stock, and for Central's redemption of its outstanding preferred stock. Each share of the new Edison stock is convertible at the shareholder's option into six-tenths of a share of Edison common stock and is redeemable at Edison's option after five years at a price of $42.00 per share. The plan provides that the transaction be accounted for under the "pooling of interest" method, whereby the assets and liabilities of the two utilities are combined in the accounts of the merged company.

Petitioners' argument ignores the controlling Illinois law. Under that law, electric rates established by the Illinois Commerce Commission are based on a fair return on the property used in the public service, *not* on a fair return on the capital invested. Illinois Bell Telephone Co. v. Illinois Commerce Commission, 414 Ill. 275, 287–288, 111 N.E.2d 329 (1953); Peoples Gas Light and Coke Co. v. Slattery, 373 Ill. 31, 48–50, 25 N.E.2d 482 (1940).

The Illinois Supreme Court, in Illinois Bell Telephone Co. v. Illinois Commerce Commission, supra, recognized that a rule basing rates on invested capital would encourage "watered stock":

"A further criticism would be that the adoption of such a rule would inevitably lead to the sin of over-invested capital, or to a situation susceptible to 'watered stock.' It was for this very reason that the sound, common-sense, and business-judgment rule of a reasonable return on the fair value of the property was evolved in the history of rate making in this country." Id. at 288, 111 N.E.2d at 336.

Even assuming the unreasonableness of the price paid for Central stock, it does not affect the rates paid by consumers. Under the plan of merger, Edison's rate base and Central's are combined, without change. Petitioners have not shown that

Central's valuation of its assets was excessive. On the contrary, they argue that *even with a lower rate structure than Edison, Central's rate of return on its property was higher than Edison's.*

■ Petitioners' final allegation of aggrievement, that the merger makes more difficult the task of demonstrating the unreasonableness of rates, is insubstantial. The value of plant changes constantly as new plant is acquired and old plant is replaced, depreciated and retired. The addition of Central's electric properties to the Edison plant does not significantly contribute to the inherent complexities of plant evaluation. Nor does the addition of Central's gas properties create a significant problem of value allocation.

In sum, petitioners have failed to make the requisite threshold showing of aggrievement. They have not made substantial factual allegations of injury to their interests. We recognize the liberalization of requirements for standing to challenge the orders of federal regulatory agencies. Cf. Scenic Hudson Preservation Conference v. Federal Power Commission, 2 Cir., 354 F.2d 608, 616 (1965). We hold that petitioners have not met those liberalized requirements.

■ Since we have found and held that petitioners lack standing to challenge the order of the Commission approving the merger in question, this could be dispositive of the petition for review.

However, assuming arguendo, that petitioners do have standing, after a careful examination of the record, the Commission's decision and order, the briefs and oral argument, we reach the following conclusions.

It is clearly established that in determining the merger was consistent with the public interest, the Commission gave appropriate consideration to the policies of the antitrust laws. The Commission properly recognized that the standards of the Holding Company Act, though not directly applicable, were pertinent and retained jurisdiction of any divestiture issue for later determination. The Commission accounting treatment for the merger reasonably protected the public against any possible financial abuses from the merger.

Petitioners did not appear at the hearings and, with indulgence of the Commission, submitted written interrogatories and filed objections. We must conclude that the petition for review lacks substantial support and is wholly without merit. We do not deem it necessary to further state our views in this respect.

In short, the Commission decided this case on a comprehensive record, its findings were reasonable and consistent with the application of correct legal criteria, the public interest has been faithfully protected and the order should be affirmed.

We have carefully considered the motion of petitioners for remand for further hearings and a stay order. Such motion is denied.

For the foregoing reasons, the petition for review is denied and the Commission's orders approving the merger and denying rehearing are in all respects affirmed.

Petition for review denied.

Orders affirmed.

SWYGERT, Circuit Judge (concurring).

I am convinced that we are reaching the right result in this case by affirming the order of the Federal Power Commission approving the merger of Central Illinois Electric and Gas Company into Commonwealth Edison Company. I question, however, the majority's holding that the petitioners lack standing in this court to challenge the order of the Commission. Simply because the petitioners' claims of aggrievement are found, upon analysis, to be insufficient to set aside the merger does not, in my opinion, foreclose their standing to challenge the Commission's order. The question of their standing ought not to be merged with the question of the merit or lack of merit of their claims.

Regardless of any specific claims of aggrievement alleged by the petitioners, I believe that as consumers of Edison they have standing to pursue their petition for review. They were allowed to intervene in the proceeding before the Commission, and they participated in the hearings to a limited extent. In allowing intervention, the Commission indicated that such allowance was not to be construed as a "recognition" that the petitioners might be "aggrieved" by any order or orders subsequently issued by the Commission.[1] On the other hand, the Commission in this court makes no mention of the issue of petitioners' standing. (Only Commonwealth Edison raises this issue.[2]) I recognize that these facts are not determinative of the question of standing. For the right or allowance of intervention by a party in an administrative proceeding is not necessarily tantamount to a right of that party to judicial review as one who is "aggrieved" by the agency action.[3] But these circumstances are not without significance; indeed, they lend strength to the statute of petitioners as "parties aggrieved" by the Commission's order.

The landmark case, FCC v. Sanders Bros. Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940), initiated a trend which has most recently found expression in Scenic Hudson Preservation Conference v. FPC, 354 F.2d 608 (2d Cir. 1965), to broaden the class of parties that have standing to challenge agency action in court.[4] I respectfully submit that the majority in the instant case has veered sharply from that trend. Here, representatives of neither local governing bodies nor other affected groups attempted to obtain a review of the Commission's approval of the merger. In these circumstances, I believe that private parties, such as these petitioners who are consumers of one of the merged companies, ought to have standing to protect the public interest as "private Attorney Generals." Cf. Associated Industries Inc. v. Ickes, 134 F.2d 694, 704 (2d Cir.), vacated as moot, 320 U.S. 707, 64 S.Ct. 74, 88 L.Ed. 414 (1943). Otherwise, agency action of significant import might improvidently be foreclosed from the judicial oversight necessary to insure that the proper statutory safeguards and procedures have been followed. Consequently, I would hold that the petitioners have standing as "parties aggrieved," under 16 U.S.C. § 825l(b) to challenge the Commissioner's order in this court.

1. 16 U.S.C. § 825g(a) recognizes the Commission's power to "admit as a party [in any proceeding before the Commission] * * * any representative of interested consumers or security holders, * * *."

2. After the Commission's order approving the merger was entered, the petitioners (intervenors) filed a petition for rehearing with the Commission. Under 16 U.S.C. § 825l(a), the right to petition the Commission for a rehearing is limited to, "Any person, * * * aggrieved by an order issued by the Commission * * *." Thus the same statutory standard governs the right both to petition the Commission for a rehearing and to petition an appellate court to review Commission action. Although the Commission denied the petition for rehearing, it in no way intimated that the petitioners (intervenors) failed to satisfy the test of aggrievement necessary to seek a rehearing. Likewise, Edison did not question the petitioners' (intervenors') right to file the rehearing petition. The Commission's action in this regard dilutes the effect of its disclaimer that the petitioners (intervenors) would not be viewed to be aggrieved merely because they were allowed to intervene. Moreover, I have difficulty reconciling Edison's apparent silence at the time the petitioners (intervenors) sought a rehearing with its attack on their standing in this court.

3. Cf. Jaffe, Standing to Secure Judicial Review: Private Actions, 75 HARV.L. REV. 255, 275 n. 67 (1961); Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 HARV.L.REV. 721, 753 n. 139 (1968).

4. See Jaffe, supra note 3.