Don SABIN, Ellen Young, Lynn T. Paul and Don Lemos, Plaintiffs-Appellants,

v.

Robert C. BERGLUND et al., Defendants-Appellees.

No. 77–1132.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Aug. 9, 1978.

Decided Sept. 13, 1978.

Rehearing Denied Dec. 1, 1978.

John J. Zimmerman, Dept. of Justice, Washington, D. C. (James W. Moorman, Asst. Atty. Gen., Washington, D. C., James L. Treece, U. S. Atty., Jerre W. Dixon, Asst. U. S. Atty., Denver, Colo., and George R. Hyde, Dept. of Justice, Washington, D. C., on the brief), for defendants-appellees.

Carl R. Nutzhorn, Aspen, Colo., for plaintiffs-appellants.

Before SETH, Chief Judge, and DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from an administrative order of the Department of Agriculture, Forest Service, which order denied a special use permit for ski instruction to plaintiff-appellant Lemos, a certified ski instructor. The permit which Lemos sought would have allowed him to teach skiing in areas located on National Forest lands near Aspen, Colorado. These lands were already under permit for winter sports in the subject area. The particular properties involved were Aspen Mountain, Aspen Highlands, Buttermilk Mountain and Snowmass. The use permits held by the area operators allowed them to conduct the ski schools as well as skiing facilities on lands covered by their permits. The basis for the denial originally was that the Forest Service would not authorize individuals to operate concessions or ski schools on a ski area under permit to another party without that party's consent.

Lemos, after the original denial, sought reconsideration and did so in conjunction with the plaintiffs Sabin, Young and Paul, his three prospective students. All of the plaintiffs submitted separate written statements in support of their request for reconsideration. The ruling by the Secretary of Agriculture upheld the ruling of the Forest Service.

Suit was filed in April 1972, seeking reversal of the denial of the permit together with declaratory judgment that the policy followed was unlawful. Also sought was an injunction against enforcement of the administrative order. The basis on which jurisdiction is claimed is the Administrative Procedure Act, 5 U.S.C.A. § 706(2).

The contentions were, *first,* that the Forest Service action was arbitrary, capricious

and contrary to law, and its enforcement was an abuse of discretion; *second,* that the denial of the permit to Lemos was arbitrary, capricious and contrary to law and an abuse of discretion, because it was based on an unlawful policy; *third,* that the policy constituted denial of due process; *fourth,* that it violated the Sherman Act, 15 U.S.C.A. § 1.

This cause has been before the court previously, *Sabin v. Butz,* 515 F.2d 1061 (10th Cir. 1975). All of the present contentions were dealt with in the cited opinion. Nevertheless, there was a remand to the district court for the reason that the review under the Administrative Procedure Act required that all relevant factors be considered to ascertain whether a rational basis existed for the agency action taken. One element which had not been considered was the possible violation of the antitrust laws. Inasmuch as the cause had been decided on summary judgment, the lack of reference in the administrative record to the monopoly issue required the summary judgment to be vacated at least as to whether there were antitrust violations. Hence this court's mandate required the antitrust or monopoly issue to be considered.

## I.

 The Act of Congress under which the Secretary acts is 16 U.S.C. § 497. This authorizes the Secretary of Agriculture, under such regulations as he may make and upon such terms and conditions as he may deem proper, (a) to permit the use and occupancy of suitable areas of land within the national forests for the purpose of constructing or maintaining hotels, resorts and any other structures or facilities necessary or desirable for recreation, public convenience or safety; and (b) to permit the use and occupancy of areas of land within the national forests not exceeding certain acreage for purposes of occupancy by individuals. The Act concludes:

The authority provided by this section shall be exercised in such manner as not to preclude the general public from full enjoyment of the natural, scenic, recreational, and other aspects of the national forests.

The quoted part which limits the Secretary's authority, apart from quantity, etc., is contained in the Act. It should be pointed out also that the Secretary in administering these federal lands is representing the interest of the United States as a proprietor. This, as well as the broad terms of the statute, enhances the power and authority of the Secretary on behalf of the government to manage in the interest of the government and in the interest of all of the people. The nature of the duties that are being performed tends to show that the review of the Secretary's decision, insofar as it is a value judgment, tends to be narrow.

In *Sierra Club v. Hickel,* 433 F.2d 24 (9th Cir. 1970), the Ninth Circuit considered the validity of an injunction which would have prohibited the issuance of a permit for the implementation of a plan for a large-scale commercial-recreational development in the Sequoia National Forest in California. The district court had entered an order granting a preliminary injunction, and on appeal the Court of Appeals held that the Sierra Club lacked standing to maintain the action, and also that no sufficient preliminary showing had been made entitling the Sierra Club to preliminary injunctive relief. The injunction was nullified.

The discussion contained in the opinion includes a statement as to the source of the authority to control lands of the United States. It states that Article IV, Section 3 of the United States Constitution commits the management and control of the lands of the United States to Congress. The opinion continues:

That congressional power is unlimited. The Supreme Court said in *Gibson v. Chouteau,* 80 U.S. (13 Wall.) 92, 99, 20 L.Ed. 534 (1872):

"With respect to the public domain, the Constitution vests in Congress the power of disposition and of making all needful rules and regulations. That power is subject to no limitations."

See also *Alabama v. Texas*, 347 U.S. 272, 274, 74 S.Ct. 481, 98 L.Ed. 689 (1954). 433 F.2d at 28.

The court in *Sierra Club v. Hickel, supra,* stated that Congress may delegate the power to manage federal lands to the Executive. Citing *Best v. Humboldt Placer Mining Co.,* 371 U.S. 334, 336–338, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963). The court added "With respect to the national forests, Congress has authorized the Secretary of Agriculture 'to regulate their occupancy and use,'" and since the Secretary is acting within the authority granted by Congress, irreparable injury was not shown.

■ The plenary nature of the Secretary's function in relationship to management of public lands has to be weighed in determining whether the selection of a single permittee is invalid as monopolistic. Another factor which we deem important is the presence in the authorizing statute, 16 U.S.C. § 497, of a federal regulatory scheme.

### II.

Our first inquiry deals with the extent to which the Forest Service and the Department of Agriculture considered anticompetitive factors. The Department's deliberations on this are contained in three documents which are accompanied by a number of exhibits. These include the "Decision of the Secretary," signed by the Deputy Assistant Secretary together with "Reconsideration of Application of Don Lemos For Special Use Permit For Ski Instruction" and "Evaluation of Concession Policy" prepared for the Chief of the Forest Service.

The conclusion to be drawn from these documents is that the Secretary was convinced that while the "single permittee" policy is recognized as a general rule, that exceptions are made when a public need for services is shown. The emphasis is also on the necessity for a "total service" ski package to be made available to the public. The documents also point out that the ski areas are to provide a number of services which are not revenue-producing. To this the ski schools contribute a portion of their gross income based on financial reports. The documents say that it would be unfair and would tend to discourage investment in the "total service" rendered by the ski areas if independent instructors were permitted to take advantage of the services provided at the expense of the permittees. The independents would be using the facilities of the area permit holder, but would not be contributing to the cost of the free service.

The documents reflect also that in the area of ski instruction, the Forest Service's priority consideration is providing "regularly scheduled and continuously available ski instruction," concentrating on widely recognized and consistent methods of teaching, whereby skiers can progress while attending various areas throughout the season. The documents also reflect the Department's view that there is a necessity for coordinating the ski instruction so as to prevent traffic problems on the slopes and so as to insure consistently available instruction for all levels of ski knowledge. Another point made is that Forest Service supervision would be more difficult (complex) with independent instructors and a lack of centralized supervision.

It is also stated that a wide range of instruction is necessary, including the American Teaching Method and the Graduated Length Method; also, French and Austrian techniques, together with instructions for the handicapped. Also necessary is instruction in ski touring and deep powder skiing outside the developed areas. All of these approaches, it is said, are used in the various areas. Thus it says that the ski school program must be comprehensive and continuing.

The appellees' surveys of the prices reflect their view that these are reasonable and competitive, and that any price competition brought about by Lemos would make a relatively insignificant contribution in relationship to the benefits which are provided by legally available coordinated ski instruction at the schools that are operated by the permit holders.

In effect, the documents conclude that the issuance of what is tantamount to certificate of public convenience and necessity would not be justified.

Also contained is the conclusion that no monopoly exists in ski instruction under the single permittee policy, because the various ski areas compete for the business of the skiing public, and that there is competition before the issuance of a permit, the object of which is to present the best bid from a total public service standpoint.

The appellants maintain that at least some independents could be allowed without undermining the economic viability of the present permittees.

Appellants also argue that the Secretary has neglected to consider any alternatives less drastic than a total denial of independent ski instruction permits and has viewed the problem as being a choice between regularly available instruction offered by the present permit holders and the chaos which would result from a proliferation of independent instructors. Appellants have proposed alternatives, including the limiting of the number of independents to a certain percentage of the instructors at the area ski schools. They also say that liability insurance and certification could answer the Secretary's contention that additional permit holders would make the situation less secure. They also suggest that the permits could be terminable in the event that area ski schools develop financial difficulties.

It may well be that allowing at least some independents would not undermine the economic condition of the established permit holders. However, the appellants have shown little to rebut the conclusion that the present system is not stifling certain techniques or leads to lack of price competition.

Appellees, on the other hand, have not shown that the Forest Service would have encountered added difficulty in administering the program if independent instruction had to be supervised as well as the supervision that is now conducted.

Appellants also argue that the Secretary's definition of the relevant market is incorrect and that each ski area, or the immediate location, has a relevant market area. This may well be true. It would seem that when you have a broad market area here that it disperses any possible problem of demonstrating that the immediate ski area or immediate ski areas would be a more logical market area. However, this does not impress us as a point which is capable of altering the result here, because there is no escape from the proposition that the Secretary has extremely broad powers in carrying out this proprietary function.

In our original consideration of the case, we noted that the standard of review under the Administrative Procedure Act is also a narrow one. We quoted from *Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971):

> Review under this provision of the A.P.A. [5 U.S.C.A. § 706(2)(A)] provokes inquiry whether the administrative decisions were based on a consideration of all the relevant factors and whether there was a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency. . . . The court's function is exhausted where a rational basis is found for the agency action taken. 515 F.2d at 1067.

Thus not only does the nature of the governmental action call for a limited review authority, the Administrative Procedure Act itself demands this.

It cannot be said that the government has evaluated the question of monopoly and anticompetitive factors in any great depth. It has carried at least the letter of the remand in that it has addressed the questions involved. It would not prove useful to pursue this matter further, however.

Because we are of the opinion that there is no violation of the antitrust laws and that at most the permit is within the scope and spirit of the said laws, we are unable to perceive any legal requirement that permits be issued on any such basis.

## III.

In the former appeal, 515 F.2d at 1070, n. 12, it was said:

We do not reach or decide appellants' claim, . . . that the agency policy violated the Sherman Act itself. In view of the disposition we make based on other considerations, we intimate no view on that question.

The trial court took up the issue and expressed its view that antitrust violations are not generated by a valid exercise of governmental action.

There are a number of cases which uphold state regulatory systems even though they are not issued or operated on a competitive basis. *Wiggins Airways, Inc. v. Massachusetts Port Auth.,* 362 F.2d 52 (1st Cir. 1966), upheld the Port Authority's decision allowing one fixed based operator to provide airport services. *Padgett v. Louisville & Jefferson Co. Air Bd.,* 492 F.2d 1258 (6th Cir. 1974), involved a contract which gave one taxicab company the right to provide service to the airport. *Heath v. Aspen Skiing Corp.,* 325 F.Supp. 223 (D.Colo.1971), concerned the ski corporation whose interests are present here. It was ruled that the single permit policy constituted valid governmental action.

Appellants maintain that most of the foregoing cases have to do with state action and are inapplicable here. We disagree. The state action cases involve governmental activity and hence are relevant.

The decision of the Court of Appeals for the District of Columbia in *Hecht v. Pro-Football Inc.,* 144 U.S.App.D.C. 56, 444 F.2d 931 (1971), is relied on by appellants. This was, however, a case which did not involve a federal agency. The District of Columbia Armory Board had been granted authority by Congress to lease the District of Columbia Stadium. It gave an exclusive lease to the Washington Redskins for a period of 30 years. The District of Columbia Court of Appeals said that Congress had not intended this operation to be immune from the antitrust laws. 144 U.S.App.D.C. at 60, 71, 444 F.2d at 935, 942. This case pretty much stands alone because the court was faced with an excessive exercise of authority, and the body which was exercising it was more of a municipal corporation than a federal government agency or department. Hence its dissimilarity to the case at bar results in its being of little value in the present context.

The cases which are more applicable are those in which Congress has created a regulatory scheme such as it has here. The principle set forth in *Antitrust* by Sullivan is that generally a regulatory scheme more or less supersedes the antitrust laws. The author states at page 744:

Where federal or state legislation grants to an administrative agency authority to control entry and regulate rates and services, competition cannot be the organizing force which shapes market structure and conduct. This is the condition in the conventional utility industries, such as water, telephone, gas and electricity. It is also the prevailing mode in rail, air, and much of water and truck transportation, communications, and banking. There are also pronounced regulatory constraints which limit entry and otherwise dampen competition in many professions and occupations and even on the organized exchanges.

Cases cited by the author include *Utility Users League v. FPC,* 394 F.2d 16 (7th Cir.), cert. denied 393 U.S. 953, 89 S.Ct. 377, 21 L.Ed.2d 265 (1968); *Keogh v. Chicago & N. W. Ry.,* 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922); *United States v. Pan American World Airways, Inc.,* 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963); *McLean Trucking Co. v. United States,* 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544 (1944); *National Broadcasting Co. v. United States,* 319 U.S. 190, 213, 63 S.Ct. 997, 87 L.Ed. 1344 (1943); *United States v. Marine Bancorporation, Inc.,* 418 U.S. 602, 94 S.Ct. 2856, 41 L.Ed.2d 978 (1974); *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975); *Silver v. New York Stock Exch.,* 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963).

The author adds that antitrust concepts are not, however, irrelevant to the utility

interests involved in the various cases cited; that frequently such regulatory schemes leave room for application of antitrust rules or may cause the agency or reviewing court to draw on antitrust concepts in formulating regulatory law and policy. This, however, does not mean that formal antitrust enforcement is necessarily appropriate.

In the present case there is an additional impediment to holding that the permit or permits in question are subject to the antitrust laws and that is that the important parties in interest are not present in court. This is an action against the government agency and officers alone. Thus enforcement of the antitrust laws would be legally as well as practically impossible.

Our previous decision in this case recognized the appropriateness of antitrust policy being considered. That decision contemplated that some kind of an appraisal or evaluation of the permits was to be made in the light of the antitrust laws. This court's opinion cannot be understood as saying, however, that the lack of competition or the selection of a single permittee necessarily was inherently contrary to the antitrust laws.

Finally, we are not saying here that the Department of Agriculture's regulatory scheme is the best that could be conceived had there been more intensive effort on the part of the officials involved. Nor are we saying that the system could not tolerate some contract instructors. At the same time we are not in a position to make these evaluations. Congress has not vested in this court the authority to decide these questions. It has given the power to the Department of Agriculture, and even though we might disagree with the manner and extent of the discharge of these duties, this does not form a basis for relief. The relevant statutes do not contemplate that we decide whether the underlying policies announced were sound or entirely wise.

Accordingly, the judgment is affirmed.