# Illinois Official Reports

## Appellate Court

*Illinois Troopers Lodge No. 41 v. Illinois Labor Relations Board, State Panel*,
2018 IL App (1st) 171382

| | |
|---|---|
| Appellate Court Caption | ILLINOIS TROOPERS LODGE NO. 41, FRATERNAL ORDER OF POLICE, Petitioner, v. THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL; and THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES (STATE POLICE), Respondents. –THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES (STATE POLICE), Petitioner, v. ILLINOIS TROOPERS LODGE NO. 41, FRATERNAL ORDER OF POLICE; and THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL, Respondents. |
| District & No. | First District, Sixth Division<br>Docket Nos. 1-17-1382, 1-17-2003 cons. |
| Filed | October 5, 2018 |
| Decision Under Review | Petition for review of order of the Illinois Labor Relations Board, State Panel, No. S-CB-16-023. |
| Judgment | Board decision affirmed. |
| Counsel on Appeal | Asher, Gittler & D'Alba, Ltd., of Chicago (Joel A. D'Alba and Ryan A. Hagerty, of counsel), for petitioner Illinois Troopers Lodge No. 41.<br><br>Lisa Madigan, Attorney General, of Chicago (David L. Franklin, Solicitor General, and Ann C. Maskaleris, Assistant Attorney General, of counsel), for respondent Illinois Labor Relations Board. |

Thomas S. Bradley, Mark W. Bennett, David A. Moore, and Darin M. Williams, Special Assistant Attorneys General, of Laner Muchin, Ltd., of Chicago, for respondent State of Illinois.

| Panel | PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion. |
|---|---|
|  | Justices Connors and Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    The State of Illinois Department of Central Management Services (State) filed an unfair labor practice charge before the Illinois State Labor Relations Board, State Panel (Board), against Illinois Troopers Lodge No. 41, Fraternal Order of Police, a union representing a unit of state police officers (the union). The Board dismissed the unfair labor practice charge and denied the union's motion for sanctions against the State. Both the Board and the union have sought direct administrative review of the decision in this court. We affirm both the Board's dismissal of the unfair labor practice charge and the Board's decision not to impose sanctions against the State.

¶ 2                                    BACKGROUND

¶ 3    The union is the bargaining unit for about 1500 state police officers. Because of the nature of their work, the officers in the union are not allowed to strike. 5 ILCS 315/2, 14, 17 (West 2016). This court has explained how the bargaining process operates with respect to groups of employees who may not strike:

"Mandatory subjects of bargaining are those matters that neither party can refuse to negotiate. [Citation.] If an agreement cannot be reached, impassed mandatory subjects must be decided by the arbitrator. [Citation.] On the other hand, permissive subjects of bargaining are terms that the parties are not required to negotiate, but if one side proposes negotiation on those matters, the other side may voluntarily negotiate. [Citation.] A party cannot insist on bargaining over a permissive subject to the point of impasse and negotiation can be cut off at any time without recourse. [Citation.] Permissive subjects of bargaining are not to be decided by the arbitrator." *Skokie Firefighters Union, Local 3033 v. Illinois Labor Relations Board, State Panel*, 2016 IL App (1st) 152478, ¶ 6.

¶ 4    Pursuant to the State Employees Group Insurance Act of 1971 (Group Insurance Act) (5 ILCS 375/1 *et seq.* (West 2016)), the State administers a plan providing health insurance coverage to about 350,000 state employees, dependents, and retirees, including the police officers who are members of the union. Section 7 of the Illinois Public Labor Relations Act (Labor Relations Act) requires the State and union to collectively bargain with employee unions over matters concerning "wages, hours and other conditions of employment." 5 ILCS 315/7 (West 2016). However, the State is not required to bargain over matters that are "matters

of [the State's] inherent managerial policy" as defined in section 4 of the Labor Relations Act (*id.* § 4).

¶ 5    The Labor Relations Act has long contained a "supremacy clause" providing that it takes precedence over conflicting state laws. *Id.* § 15(a). In 2004, the State of Illinois enacted Public Act 93-839, which amended both the Labor Relations Act and the Group Insurance Act. Pub. Act 93-839 (eff. July 30, 2004). Public Act 93-839 excised benefits provided under the Group Insurance Act from the Labor Relations Act's "supremacy clause." Section 15(a) of the Labor Relations Act now provides: "In case of any conflict between the provisions of this Act and any other law (*other than Section 5 of the State Employees Group Insurance Act of 1971 \*\*\**), executive order or administrative regulation relating to wages, hours and conditions of employment and employment relations, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control." (Emphasis added.) 5 ILCS 315/15(a) (West 2016).

¶ 6    With that legal backdrop in place, we proceed to explain the facts of the case now before us. The record is 21,909 pages long, so we have omitted large portions of background and facts that are not relevant to our ultimate disposition. To avoid repetition and provide reading continuity, we will set forth some additional facts later in the Analysis section of this opinion. The following chronology and recitation of facts is taken from the pleadings, exhibits, affidavits, and other evidence in the record, most of which was adduced at a 10-day hearing before a Board administrative law judge on the unfair labor practice charge.

¶ 7    In 2015, the State and the union were in the process of bargaining a successor collective bargaining agreement to replace an existing agreement set to expire on June 30, 2015. Two union officials, Bruce Bialorucki and Michael Powell, negotiated the union's 2012-2015 collective bargaining agreement with the State. Health insurance was a significant issue during that bargaining. The parties exchanged various proposals aimed at saving the State some of its health insurance costs. No agreement was reached, and the union filed an unfair labor practice charge against the State. The Board's general counsel issued a declaratory ruling that health insurance was a mandatory subject of bargaining. An arbitrator awarded the health insurance plan that the State had previously implemented unilaterally.

¶ 8    Bialorucki, who is an attorney, also participated in negotiations for the successor 2015-2019 collective bargaining agreement. Once again, the parties exchanged numerous written proposals regarding health insurance. Bialorucki testified regarding those negotiations as follows. The State never contended that it was not required to bargain over health insurance during the negotiation sessions, at the bargaining table, or before interest arbitration. There being no agreement on the issue, interest arbitration began before a three-member panel consisting of Bialorucki as the union representative, Joseph Hartzler representing the State, and a neutral arbitration panel member, Daniel Nielsen. The panel had over a dozen sessions beginning in late 2015 and ending in April 2016. Bialorucki attended every session. Both the union and State submitted health insurance proposals to the panel. Both sides stipulated to the arbitration panel's jurisdiction over health insurance, and the State did not object to arbitrating health insurance issues until the "final submissions" stage at the very end. The "process" in place required each party to submit final offers. The other party could submit an objection to that final offer, and the submitting party could file something to "cure or fix" its final offer. However, because the union was waiting for certain information, the parties agreed to submit final offers on all issues except health insurance first, to be followed by final offers on health

insurance only. During the time final offers were being exchanged regarding non-health-insurance issues, the State provided health insurance information to the union as requested. In early January 2016, the parties exchanged final offers regarding health insurance. This exchange included a final offer from the State and objections by the union to the State's offer.

¶ 9 Despite its active participation in ongoing bargaining regarding health insurance, on January 13, 2016, the State requested a declaratory ruling from the Board's general counsel on whether its own final offer on health insurance encompassed permissive or mandatory subjects of bargaining. The State requested that the general counsel find that Public Act 93-839's amendment to the "supremacy clause" in 2004 made health insurance a prohibited subject of bargaining, with the result that the State could take the issue of health insurance entirely out of postimpasse arbitration if it desired to do so. See *Skokie Firefighters Union, Local 3033*, 2016 IL App (1st) 152478, ¶ 6. On March 1, 2016, the general counsel ruled that the State's final offer related to a mandatory subject of bargaining. This ruling relied on an earlier 2013 ruling issued by a prior general counsel to the same effect. But recognizing that the issue would be better resolved after a full factual hearing, the general counsel suggested that a party file an unfair labor practice charge to trigger such a hearing. The State followed up on that suggestion and filed the charge at issue here on March 14, 2016.

¶ 10 The arbitration panel's hearings concluded in April 2016. In a posthearing brief filed in June, the State referenced its pending unfair labor practice charge but noted: "For purposes of efficiency and without waiving any arguments raised by the State before the [Board] which could impact this panel's jurisdiction to issue an award on health insurance, until such time as the [Board] issues a ruling in that matter, the State does not object to this panel's consideration of the parties' respective health insurance proposals."

¶ 11 Then, in August 2016, the Board directed that a complaint issue on the charge and that an administrative hearing be held on it. One day later, the State notified the arbitration panel (which had already closed its record on July 1, 2016) that it now had a "good faith objection" to the arbitration panel deciding the health insurance issue, based on the Board's order. The State requested a stay of the arbitration pending the Board's resolution of the unfair labor practice charge. Bialorucki characterized the State's August notification as the first time the State objected to arbitrating health insurance. Despite the Board having issued a complaint on its unfair labor practice charge, the State did not withdraw its pending final health insurance offer.

¶ 12 On October 3, 2016, the arbitration panel denied the State's request for a stay. The panel found that the State did not make its objection to arbitrating health insurance in "good faith" as required by the Board's rules (80 Ill. Adm. Code 1230.90(k) (2003)), because the State did not object until seven months after the January 2016 objections deadline that the panel had set. The panel further found that the Board's decision to issue a complaint and hold an evidentiary hearing on the unfair labor practice charge was not relevant to its consideration of the stay request. As an alternative ground, the panel relied on the Board general counsel's prior ruling that health insurance was a mandatory subject of bargaining. On December 2, 2016, the arbitration panel issued an award that granted the union's health insurance proposal. About the same time, the Board also denied the State's request for a stay.

¶ 13 The next proceedings involved an entity established by sections 3(h) and 14(n) of the Labor Relations Act (5 ILCS 315/3(h), 14(n) (West 2016)) called the "governing body." The governing body consists of various State department heads and the members of the Board. The

governing body has the authority to reject an arbitration panel's award and return the matter for supplemental arbitration proceedings. *Id.* On December 13, 2016, the governing body rejected the arbitration panel's award, and the matter proceeded to supplemental arbitration proceedings.

¶ 14 That brings us back to the unfair labor practice charge. The complaint issued on the charge proceeded to a full evidentiary hearing before the Board's administrative law judge. Hearings, which included Bialorucki's testimony, were held on various dates between October 18, 2016, and January 6, 2017. At the conclusion of the hearings, the union moved for sanctions because, among other things, a State witness allegedly provided false testimony regarding the State's past bargaining practices, namely that the State had never bargained with any union other than the American Federation of State, County, and Municipal Employees (AFSCME) over health insurance. The union also objected to similar assertions the State's counsel made in his opening statements. The State responded that sanctions were not warranted because the issue was one of genuine disputed fact.

¶ 15 On March 31, 2017, the administrative law judge issued a 106-page opinion exhaustively detailing the testimony and evidence presented at the nine-day hearing. In summary, she found that the State had bargained over health insurance with employee unions for over 28 years. The State primarily bargained over health insurance with the AFSCME union, which represented the largest number of employees. Through the acquiescence of smaller unions, which allowed AFSCME to take the lead, the terms of the AFSCME agreement were generally applied to other bargaining units. However, beginning in 2015, the State began bargaining over health insurance with other unions before it had reached an agreement with AFSCME. Generally, health insurance bargaining did not include vendor contracts and overall premium rates. The premium rates that were negotiated with unions concerned the share of the insurance premium cost that employees would pay *vis-à-vis* the State. The judge found that the State and union exchanged numerous health insurance proposals during the 2015 negotiations and the State never objected to the topic's inclusion in the bargaining process. She also found that the State never objected to including health insurance in the interest arbitration convened following the parties' impasse and, in fact, that the parties stipulated to the "arbitrator's jurisdiction over wages, hours, and conditions of employment, including health insurance." Further, she stated, the State did not even make a reservation of rights regarding the topic before submitting its final proposals and that the matter proceeded to interest arbitration at which the State never objected to the inclusion of health insurance as a topic of bargaining. The judge found that the State did not object to the consideration of health insurance in its June 2016 arbitration brief and had not objected before filing its August 9, 2016, stay request.

¶ 16 Notwithstanding her findings regarding the State's failure to make a timely objection to consideration of health insurance, the administrative law judge addressed the merits of the State's contention that the Public Act 93-839 amendments took the entire issue of health insurance outside of the scope of the collective bargaining process. She disagreed with the State's interpretation of the relevant statutes and found that health insurance, in all of its aspects, was a mandatory subject of bargaining.

¶ 17 The administrative law judge granted the union's motion for sanctions in part and denied in part. She declined to impose a sanction on the basis that the State engaged in frivolous litigation, finding in relevant part as follows:

"there is insufficient evidence that the State advanced the disputed claim for the purpose of delay or to needlessly increase costs. At the time the State claimed that it had never bargained health insurance with unions other than AFSCME, it already knew that Union planned to call at least one witness on the issue of the State's bargaining history. From the State's perspective, its claim would not have changed the course of the hearing and it is therefore difficult to find that the State made the claim for purposes of delay or to increase the Union's costs."

She likewise denied sanctions for the opening statement comments of the State's counsel, noting that doing so would be unprecedented in unfair labor practice charge hearings. However, she granted the union's motion for sanctions regarding the testimony of the State's witness who claimed that the State had never bargained over health insurance with any union other than AFSCME. The administrative law judge found that those statements were untrue, in that "the evidence without a doubt proved the contrary" because "[t]he State repeatedly bargained over health insurance with many unions other than AFSCME, most notably, the respondent union in this case." The sanction was an "admonishment" rather than an award of fees and costs, which the union had sought.

¶ 18    The administrative law judge concluded that (1) the union did not violate section 10(b)(4) of the Labor Relations Act when it submitted its proposal on health insurance to the arbitration panel, (2) health insurance is a mandatory subject of bargaining, and (3) the union's motion for sanctions should be denied in part and granted in part, as explained above. She dismissed the complaint brought under the unfair labor charge, subject to the filing of exceptions and the Board's consideration of those exceptions.

¶ 19    Both parties filed exceptions to the administrative law judge's recommended decision and order. On July 11, 2017, the Board issued a written decision and order that (1) accepted and adopted the administrative law judge's findings of fact; (2) determined that the union did not commit an unfair labor practice when it submitted the issue of health insurance to arbitration and refused to withdraw it; (3) health insurance premiums, copayments, deductibles, and out-of-pocket maximums (OPMs) are mandatory subjects of bargaining; and (4) procurement and choice of vendor are permissive subjects of bargaining. In so holding, the Board specifically rejected the State's contention that the Public Act 93-839 amendments to section 15(a) of the Labor Relations Act took health insurance completely outside the scope of collective bargaining. The Board rejected the administrative law judge's recommendation to sanction the State with an admonishment, finding that sanctions were not warranted in light of "the extensive record of this case, the amount of time devoted to describing the bargaining history, and the State's legal arguments regarding the duty to bargain."

¶ 20    Although it held that certain aspects of health insurance were permissive, rather than mandatory, subjects of bargaining, the Board nonetheless dismissed the unfair labor charge, finding that the State interposed its objection too late. The Board explained as follows:

"Based on the conduct of both parties, and their bargaining history, the Union did not have a clear indication that health insurance was a permissive subject of bargaining, nor did the State timely and clearly object to consideration of this issue by the interest arbitration panel. Therefore, we find that the Union did not commit an unfair labor practice when it insisted that health insurance proposals be submitted to and considered by the interest arbitrator and panel."

¶ 21 Both the State and the union have filed petitions for administrative review of the Board's decision in this court pursuant to Illinois Supreme Court Rule 335 (eff. July 1, 2017). This court consolidated the two petitions.

¶ 22                                   ANALYSIS
¶ 23                   *Union's Petition for Review (Case No. 1-17-1382)*
¶ 24 We first address the union's petition for review, which contains two primary contentions. First, the union takes issue with the Board's parsing of the various elements of health insurance, finding some to be mandatory subjects of bargaining but others only permissive subjects. Second, the union requests that this court reverse the Board's determination not to impose sanctions on the State.

¶ 25 The administrative law judge found that health insurance, as a whole, is a mandatory subject of bargaining under the test established in *Central City Education Ass'n v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 523 (1992). The *Central City* court established a three-part test to determine whether a matter is a permissive or mandatory subject of bargaining:

> "The first part of the test requires a determination of whether the matter is one of wages, hours and terms and conditions of employment. *** If the answer to this question is no, the inquiry ends and the employer is under no duty to bargain.
>
> If the answer to the first question is yes, then the second question is asked: Is the matter also one of inherent managerial authority? If the answer to the second question is no, then the analysis stops and the matter is a mandatory subject of bargaining. If the answer is yes, then the hybrid situation *** exists: the matter is within the inherent managerial authority of the employer and it also affects wages, hours and terms and conditions of employment." *Id.*

¶ 26 The administrative law judge determined that all five elements of health insurance at issue—premiums, deductibles, copayments, OPMs, and procurement/vendors—were mandatory subjects of bargaining. The Board modified that recommendation. It found that "those items that directly impact the compensation of covered employees—namely, premiums, deductibles, co-payments, and OPMs," were mandatory subjects of bargaining pursuant to *Central City*. But the Board found that items that "did not bear on wages or terms and conditions of employment, including choice of vendor and procurement of health care" were permissive subjects of bargaining.

¶ 27 The union requests us to reverse the Board and reinstate the administrative law judge's determination on this particular issue. It contends that choice of vendor and procurement are mandatory, rather than permissive, subjects of bargaining, and it seeks review of the Board's decision on that basis. But it is a basic principle of Illinois law that "one who has obtained *** all that has been asked for" in the lower tribunal "cannot appeal from the judgment." *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 386 (1983) (citing cases). Further, our supreme court has explained, " 'It is fundamental that the forum of courts of appeal should not be afforded to successful parties who may not agree with the reasons, conclusion or findings below.' " *Id.* (quoting *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 414 Ill. 275, 282-83 (1953)); see also *Finko v. City of Chicago Department of Administrative Hearings*,

2016 IL App (1st) 152888, ¶ 27 (rejecting appeal of party who obtained a full refund of a fee he paid but insisted that it should be paid by the City of Chicago rather than the court clerk).

¶ 28 The union never filed any affirmative litigation of its own before the Board. The case before the Board, and before this court, solely involves the State's charge that the union engaged in an unfair labor practice, and the complaint that the Board issued on that charge. Section 11(c) of the Labor Relations Act (5 ILCS 315/11(c) (West 2016)) provides that "[i]f there is no preponderance of evidence to indicate to the Board that the person named in the charge has engaged in or is engaging in the unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the complaint." Since the union obtained all the relief it was entitled to—a dismissal of the unfair labor charge—it cannot complain about the Board's rationale in reaching that result. See *Illinois Bell*, 414 Ill. at 282-83.

¶ 29 As its second contention of error, the union takes issue with the Board's refusal to grant sanctions against the State because one of the State's witnesses testified that the State had not bargained over health insurance with unions other than AFSCME in the past. The administrative law judge recommended that the State be sanctioned with an admonishment because of that testimony. The Board found, however, that sanctions were not warranted. The Board explained there was an "extensive record in this case" and noted "the amount of time devoted to describing the bargaining history, and the State's legal arguments regarding the duty to bargain." The Board determined that sanctions were not appropriate because the testimony did not ultimately impact the case, the State's pursuit of the point was not clearly frivolous, and the testimony stemmed from a factual dispute. In this court, the union requests reinstatement of the admonishment and an award of fees and costs.

¶ 30 Section 11(c) of the Labor Relations Act governs sanctions that the Board may impose. It provides, in relevant part, the following:

> "The Board's order may in its discretion also include an appropriate sanction, based on the Board's rules and regulations, and the sanction may include an order to pay the other party or parties' reasonable expenses including costs and reasonable attorney's fee, if the other party has made allegations or denials without reasonable cause and found to be untrue or has engaged in frivolous litigation for the purpose of delay or needless increase in the cost of litigation; the State of Illinois or any agency thereof shall be subject to the provisions of this sentence in the same manner as any other party." 5 ILCS 315/11(c) (West 2016).

¶ 31 We review the Board's determination not to impose sanctions for abuse of discretion. *City of Bloomington v. Illinois Labor Relations Board, State Panel*, 2011 IL App (4th) 100778, ¶ 17. An abuse of discretion exists where the underlying decision is arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the tribunal. *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 32 On this record, we cannot say that the Board abused its discretion in refusing to impose sanctions for the testimony at issue and the related opening statement comments. The testimony was isolated and hardly led anyone astray. The Board correctly recognized that, based on the full and exhaustive record, the testimony did not "ultimately impact the case" and that the testimony involved "a fact dispute about the collective bargaining history." We must agree. The record contains evidence that the State had a history of bargaining health insurance with AFSCME with the intent that "lead" bargaining would apply to smaller unions. While the witness's testimony that AFSCME was the only union with which the State bargained over

health insurance was imprecise and ultimately found to be inaccurate, the underlying facts were complex and nuanced. In sum, we cannot say the Board abused its discretion in refusing to impose a sanction for it, nor for the related arguments of counsel.

¶ 33                    *State's Petition for Review (Case No. 1-17-2003)*

¶ 34        In its petition for review, the State asks us to determine that the Board erred in dismissing the unfair labor practice charge. The State focuses most of its arguments on its contention that the Board erred in finding that any aspect of health insurance was either a mandatory or permissive subject of bargaining. The State takes the position that the Public Act 93-839 amendments made health insurance a completely prohibited subject of collective bargaining. The Board interpreted the relevant statutes differently and rejected this contention. The second part of the Board's decision, which addresses this issue, contains no language linking its interpretation of Public Act 93-839 to its disposition of the unfair labor practice charge. Therefore, it appears that the Board's decision regarding that issue is akin to *dicta* and that the Board's interpretation of the Public Act did not provide an independent basis to dismiss the unfair labor charge.

¶ 35        In contrast, the Board specifically found that the union did not commit an unfair labor practice because the State did not timely object to consideration of health insurance by the arbitration panel—or put another way, because the State forfeited its right to object to arbitrating the health insurance impasse. In the conclusion of the first part of its decision, the Board stated: "Therefore, we find that the Union did not commit an unfair labor practice when it insisted that health insurance proposals be submitted to and considered by the interest arbitrator and panel."

¶ 36        We begin, therefore, with the Board's finding regarding the State's forfeiture. The Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)) governs our review of the Board's decision. The scope of that review "extend[s] to all questions of law and fact presented by the entire record before the court." *Id.* § 3-110. "The applicable standard of review *** depends upon whether the question presented is a question of fact, a question of law, or a mixed question of law and fact." *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006). The Board's findings of fact are "held to be prima facie true and correct" (735 ILCS 5/3-110 (West 2016)) and will be disturbed on review only if they are against the manifest weight of the evidence. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998). The Board's findings of fact are against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Id.*

¶ 37        After it adopted all of the administrative law judge's factual findings regarding the bargaining history between the parties, the Board recited some of them in detail to explain why the union did not commit an unfair labor practice. This history included the following facts: (1) the State "never clearly and formally objected to the interest arbitration panel considering the issue of health insurance"; (2) although the State filed the unfair labor practice charge in March 2016, it made statements in its June 2016 arbitration brief and in its August 2016 Board filings "that it believed health insurance was a permissive subject of bargaining"; (3) the State's objections were not made in "good faith" because "they were raised too late, after the parties had stipulated to health insurance as an issue before the arbitrator, had engaged in bargaining regarding health insurance, and had exchanged proposals on health insurance"; (4) given this conduct, the union had no clear indication that it should withdraw or amend its

health insurance proposal; and (5) the State did not timely and clearly object to the arbitration panel's consideration of the subject. All of these facts are well supported by the record adduced before the Board—not only the voluminous documentary history of the bargaining process between the parties but also the testimony of Bruce Bialorucki.

¶ 38 Whether an unfair labor practice has been committed presents a mixed question of fact and law. *City of Belvidere*, 181 Ill. 2d at 205. Mixed questions of fact and law " 'are questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " (Internal quotation marks omitted.) *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008) (quoting *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board*, 216 Ill. 2d 569, 577 (2005)). Under this standard, the Board's decision will be reversed only when the decision is clearly erroneous, that is, when, based on the entire record, we are " 'left with the definite and firm conviction that a mistake has been committed.' " (Internal quotation marks omitted.) *Board of Trustees of the University of Illinois v. Illinois Education Labor Relations Board*, 224 Ill. 2d 88, 97 (2007) (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001)).

¶ 39 Based on our review of the entire record, we are unable to find that the Board's decision to dismiss the unfair labor practice charge because of the State's tardy objection was clearly erroneous. After leading the union down a costly primrose path for months (if not years) by bargaining over the troopers' health insurance to the point of exhaustion, the State pulled the rug out from under the union by formally objecting to bargaining over health insurance at all. When it did so, the deadline for objections had long passed, and the impasse had been fully submitted to the arbitration panel. As noted above, the arbitration panel's proceedings concluded in April 2016. In its posthearing brief filed in June, the State referred to its just-filed unfair labor practice charge, but it contradictorily stated that it would allow the arbitration panel to consider the health insurance impasse "[f]or purposes of efficiency" and further stated, "*the State does not object* to this panel's consideration of the parties' respective health insurance proposals" (emphasis added). The State, in essence, was trying to have it both ways. It cannot do this and justifiably claim the union was committing an unfair labor charge by taking health insurance to postbargaining impasse arbitration.

¶ 40 Because we find that the Board properly dismissed the entire unfair labor practice charge on the basis that the State acquiesced to bargaining the disputed issues and did not interpose a timely objection, we have no need to resolve the parties' dispute regarding the interpretation of the Labor Relations Act and the State Employees Group Insurance Act and determine which, if any, elements of health insurance are properly subjects of mandatory or permissive bargaining.

¶ 41                                                    CONCLUSION

¶ 42 We affirm the Board's order dismissing the unfair labor practice charge and denying sanctions against the State.

¶ 43 Board decision affirmed.